U.S. ⬚ ⬚ ⬚ ⬚AS
NORTHER⬚ ⬚ ⬚ ⬚ ⬚

FEB 1 0 2017

CLERK, U.S. DIST ⬚ ⬚ ⬚RT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL COLBAUGH, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:16-CV-664-A |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254 filed by petitioner, Michael
Colbaugh, a state prisoner, against Lorie Davis, director of the
Texas Department of Criminal Justice, Correctional Institutions
Division, Respondent. After having considered the pleadings and
relief sought by Petitioner, the Court has concluded that
Respondent's motion to dismiss should be granted and the petition
dismissed as time-barred.

### I. FACTUAL AND PROCEDURAL HISTORY

In November 1992 Petitioner was indicted in Tarrant County,
Texas, Case No. 0492754A, for the capital murder of Roger Rushing
in the course of committing and attempting to commit robbery and

kidnapping. (01SHR[1] at 24.) On July 29, 1994, pursuant to a plea agreement, Petitioner pleaded guilty to the lesser-included offense of murder with a deadly weapon. (*Id.* at 26-32.) On November 3, 1994, the trial court sentenced Petitioner to life imprisonment. (*Id.* at 11-19.) As part of the plea agreement, Petitioner expressly waived his right of appeal, and he did not pursue an appeal. (*Id.* at 14.) Thus, the judgment of conviction became final thirty-two days later on December 5, 1994.[2] TEX. R. APP. P. 26.2(a)(1). Petitioner sought state habeas relief from his conviction by filing two state habeas applications. The first, filed on December 14, 1998, was denied by the Texas Court of Criminal Appeals on January 27, 1999, without written order.[3] (*Id.* at cover & 3.) The second, filed on July 17, 2015, was dismissed by the Texas Court of Criminal Appeals as a successive petition under Texas Code of Criminal Procedure art. 11.07, § 4(a)-(c). (SH02 at 2 & "Action Taken.") This federal petition challenging

---

[1]"SH01" and "SH02" refer to the state court records for petitioner's state habeas actions in WR-40,052-01 and WR-40,052-02, respectively.

[2]December 3, 1994, was a Saturday.

[3]Under the prison mailbox rule, a prisoner's state habeas application is deemed filed when placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). Petitioner's state habeas applications however do not provide the dates they were placed in the prison mailing system. Thus, the prison mailbox rule is not applied to his state habeas applications.

his conviction was filed on February 8, 2016.[4] (Pet. at 13.[5])

This case involves the robbery, kidnapping, and murder of Roger Dale Rushing Jr. by Petitioner and three accomplices, Johnny Snodgrass, Jack Templer, and Jeffrey Offutt. In Snodgrass's appeal, the Second District Court of Appeals of Texas summarized the facts as follows:

> On the night of September 12, 1992, Snodgrass and three friends . . . were riding around in Colbaugh's car. The four young men had earlier purchased and consumed most of two cases of beer. They decided to drive to Dallas to the Deep Ellum area. While traveling east on Interstate 30, they noticed Roger Dale Rushing, Jr. riding a Kawasaki Ninja motorcycle as Rushing passed Colbaugh's car. Offutt, who thought he was dying of self-diagnosed throat cancer, commented that he "would like to have one of those before I die." Colbaugh asked if Offutt wanted to ride it, Offutt replied he did, and the group began to follow Rushing through Arlington.
>
> After approximately ten minutes, Rushing pulled up in front of a house in Arlington. As Rushing parked his motorcycle, Colbaugh drove the car up to the curb across from Rushing's home. Snodgrass called to Rushing in a feigned attempt to ask for directions. When Rushing approached the car, Snodgrass pointed a .45 caliber automatic pistol at Rushing and told Rushing to give his motorcycle keys and helmet to Offutt. After Rushing gave the keys and helmet to Offutt, Snodgrass

---

[4]Similarly, under the prison mailbox rule, a federal habeas petition filed by a prisoner is deemed filed when the petition is placed in the prison mail system for mailing. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

[5]Petitioner inserts unpaginated pages into his petition and attaches his unpaginated memorandum to the petition. Therefore, the pagination in the ECF header is used.

ordered Rushing to get into the backseat of the car.
Offutt started the motorcycle and backed out of the
driveway. While Rushing was in the backseat of the car,
Snodgrass kept the pistol pointed at Rushing, and
Templer additionally pointed a sawed-off 12-gauge
shotgun at Rushing. Snodgrass told Rushing that Offutt
was going to ride the motorcycle for a little while and
that they would eventually let Rushing go.

The group drove around with Rushing in the car.
Other than pointing weapons at him, the group was
friendly to Rushing, asking questions such as his name,
where he was from, what kind of music he liked, and
whether he smoked. They asked Rushing how much gas the
motorcycle had, and Rushing said it probably needed
some. They signaled to Offutt and pulled off at a gas
station.

After buying some gas, the group, followed by
Offutt on the motorcycle, drove to an isolated area.
They stopped at a barricade that blocked the road and
everyone got out of the car. Snodgrass told Rushing
that they were going to tie him up and that a road
construction crew would find him in the morning.
Templer told Rushing to take off his cowboy belt
buckle, jacket, and boots. Colbaugh got some duct tape
out [of] his car; and Colbaugh, Snodgrass, and Templer
then walked Rushing about 150 yards further down the
road past the barricade. At this time, Snodgrass still
had the .45 pistol and Templer still had the 12-gauge
shotgun. Offutt parked the motorcycle, remained at the
car, and drank more beer.

Snodgrass instructed Colbaugh to tape Rushing's
hands together, and Colbaugh decided to also tape
Rushing's feet so Rushing could not run away or kick
him. Snodgrass told Rushing to stand by the side of the
road. Colbaugh then left Rushing with Snodgrass and
Templer and began walking back toward the car. Colbaugh
and Offutt both testified at trial that they heard
several shots, beginning first from the .45 and then
from the shotgun. Rushing was shot five times with the
pistol -- once in the head, three times in the chest,

4

and once in the thigh -- and three times with the
shotgun -- Once in the neck, once in the chest, and
once in the arm. Colbaugh, Snodgrass, and Templer fled
the scene in the car; Offutt fled the scene on the
motorcycle. A local resident found Rushing's body the
next morning.

After fleeing the scene, the group initially went
to Colbaugh's house and rode the motorcycle up and down
the street. Concerned about the noise waking Colbaugh's
stepfather, the group then decided to go to Snodgrass's
house. There, the group continued to ride the
motorcycle up and down the street. Later that morning,
the group again rode the motorcycle up and down the
street, and Offutt wrecked the motorcycle and injured
himself. The motorcycle was secreted behind the house,
and Offutt later took it and moved to Boyd, Texas.
Colbaugh went to live near Stephenville, Texas.
Authorities arrested Offutt and Colbaugh sometime in
late October 1992, and Snodgrass, after learning from
Colbaugh's stepsister that the police were looking for
him, turned himself in to police.

(Pet'r's Exs., Op. 12, ECF No. 3-5.)

## II.  ISSUES

Petitioner raises the following claims for relief:

(1)  New evidence shows that he is actually innocent;

(2)  The state withheld exculpatory evidence, thereby
     rendering his guilty plea involuntary and
     unknowing;

(3)  He received ineffective assistance of trial
     counsel, thereby rendering his guilty plea
     involuntary; and

(4)  The state perpetrated fraud on the trial court by
     concealing facts.

(Pet. at 6 & 8.)

### III.   STATUTE OF LIMITATIONS

Respondent believes the petition is time-barred. (Resp't's Answer at 4-13.) Title 28 U.S.C. § 2244(d) imposes a one-year statute of limitations for filing a petition for federal habeas corpus relief. 28 U.S.C. § 2244(d). Section 2244(d) provides:

> (1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted

6

toward any period of limitation under this subsection.
*Id.* § 2244(d)(1)-(2).

A petitioner attacking a judgment of conviction which became
final before the AEDPA's effective date has one year from the
effective date of the Act, or until April 24, 1997, to file a
federal habeas corpus action. *Flanagan v. Johnson*, 154 F.3d 196,
200 (5th Cir. 1998); *United States v. Flores*, 135 F.3d 1000, 1006
(5th Cir. 1998).

With limited exceptions not applicable here, the limitations
period begins to run from the date on which the challenged
"judgment became final by the conclusion of direct review or the
expiration of the time for seeking such review" under subsection
(A). In this case, the judgment of conviction became final on
December 5, 1994, before the effective date of the AEDPA.
Accordingly, Petitioner had until April 24, 1997, within which to
file a timely federal habeas petition, absent any applicable
tolling.

Petitioner's state habeas applications filed after
limitations had expired did not operate to toll the limitations
period under the statutory tolling provision in § 2244(d)(2).
*Hutson v. Quarterman,* 508 F.3d 236, 240 (5th Cir. 2010); *Scott v.
Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). Nor has Petitioner

demonstrated that he is entitled to tolling as a matter of equity.

Equitable tolling of the statute of limitations is permitted only in rare and exceptional circumstances when an extraordinary factor beyond a petitioner's control prevents him from filing in a timely manner or he can make a convincing showing that he is actually innocent of the crime for which he was convicted. *McQuiggin v. Perkins*, — U.S. —, 133 S. Ct. 1924, 1928 (2013); *Holland v. Florida*, 560 U.S. 631 , 649 (2010). "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial" and affirmatively demonstrate innocence. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). New evidence may consist of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" and must be sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).

Although actual innocence, if proved, can overcome the statute of limitations, Petitioner waived his claims by entering a voluntary and knowing guilty plea to the lesser-included offense

8

of murder with a deadly weapon. *McQuiggin*, 133 S. Ct. at 1928. *See also United States v. Vanchaik-Molinar*, 195 Fed. App'x 262, 2006 WL 2474048, at *1 (5th Cir. 2006) ("A voluntary guilty plea waives all non-jurisdictional defects that occurred prior to the plea and precludes consideration of a claim challenging the sufficiency of the evidence."). Even if *McQuiggin* applies in the context of a guilty plea, Petitioner has not made a credible showing that he is actually innocent of the crime in light of "new evidence." Petitioner contends that he did not shoot Rushing; that he did not know Rushing would be shot; that he heard Snodgrass tell Rushing that he would let him go; that he had walked away from Snodgrass and Templer and then heard gunshots; and that he had seen Snodgrass and Templer shooting Rushing after he had walked away. (Pet. 6-7, ECF No. 3.) He asserts that new evidence in the form of witness statements and testimony given in Templer's and Snodgrass's trials in 1994 and 1996, after he had entered his guilty plea, confirm that Rushing was shot to death by Snodgrass and Templer and that Petitioner had not caused Rushing's death by shooting him. (*Id.*) Specifically, he argues (all spelling and/or grammatical errors are in the original) --

> Applicant's judgement for Murder . . . was had on
> 7/29/1994, before the aforesaid trial evidence was
> recorded as part of the public record and thereafter

9

became new evidence available to Applicant as documents
in the public record. Applicant did not possess at the
time of his plea hearing the documents that have now
become sworn, documentary proof of facts that
affirmatively show: Applicant did not in fact cause
Roger Rushing's death by shooting him, but in fact show
applicant witnesses Johnny Snodgrass & Jackie Templer
shoot Rushing after Applicant left the trio . . . and
started walking away from them towards Applicant's car,
without the knowledge that R. Rushing would be shot.

. . .

To be guilty of intentionally causing the death of
an individual, Roger Rushing, by shooting him with a
firearm, Applicant must have committed the conduct that
resulted in Rushing's death, by the means alleged,
beyond a reasonable doubt. Without committing the
shooting himself it is clear that applicant is actually
innocent of the Murder for which he is convicted because
he did not in fact commit the essential elements of the
Murder he plead guilty to. The new, factual evidence
shows Applicant walked away before Rushing was shot,
Applicant did not shoot Rushing, as Applicant did not
have a weapon, & someone else shot Rushing.

(Pet'r's Mem. 14 & 16, ECF No. 3 (emphasis in original) (citations

omitted).)

This information, however, is not "new evidence" that

"factually exonerates" Petitioner. (Pet'r's Mem. 15, ECF No. 3.)

Petitioner was well aware of the nature and extent of his

participation in the crime at the time he entered his guilty plea,

and, under Texas's law of parties, he could have been convicted of

capital murder based upon his participation even though he was not

a triggerman. *See Fuller v. Dretke,* 161 Fed. App'x 413, 2006 WL

10

42034, at *8 (Jan. 9, 2006); *Johnson v. State,* 853 S.W.2d 527, 534 (Tex. Crim. App. 1992), *cert. denied,* 510 U.S. 852 (1993) (providing law of parties is applicable to capital murder). The conduct of Petitioner's accomplices is attributable to him. Petitioner's so-called "new evidence" is not evidence of his innocence nor sufficient to result in a miscarriage of justice.

Petitioner also argues that his "procedural default" should be excused under the Supreme Court decisions in *Trevino v. Thaler,* 133 S. Ct. 1911 (2013), and *Martinez v. Ryan,* 132 S. Ct. 1309 (2012). However, this line of cases addresses excusing a procedural default of a claim and does not apply to the federal statute of limitations or the tolling of that period. *See Hackney v. Stephens,* No. 4:14-CV-074-O, 2014 WL 4547816, at *2 (N.D. Tex. Sep. 15, 2014) (citing cases).

The primary issue here is the statute of limitations, and Petitioner must show that he pursued his rights with "reasonable diligence" but extraordinary circumstances prevented him from filing a petition within the time allowed by the statute. *Holland,* 560 U.S. 631, 649-50 (2010); *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Petitioner asserts that he "did not come to possess the [witness statements or] specific trial testimony he now cites as evidence of innocence until well after Dec. 7, 1998." (Pet'r's

11

Resp. 8, ECF No. 18.) However, clearly, Petitioner did not thereafter "pursue the process with diligence and alacrity." *Phillips v. Donnelly,* 216 F.3d 508, 511 (5th Cir.), *reh'g granted on other grounds,* 223 F.3d 797 (5th Cir. 2000). Nor do Petitioner's pro se status and an inadequate prison law library entitle him to equitable tolling. *Felder v. Johnson,* 204 F.3d 168, 171-73 (5th Cir. 2000); *Scott v. Johnson,* 227 F.3d 260, 263 n.3 (5th Cir. 2000). Finally, Petitioner's extreme delay further mitigates against equitable tolling.

In summary, there is no evidence whatsoever in the record that Petitioner was prevented in some extraordinary way from asserting his rights in state or federal court, and he presents no new evidence to meet the actual-innocence exception. Therefore. Petitioner's federal petition was due on or before April 24, 1997, and his petition filed on February 8, 2016, is untimely.

For the reasons discussed herein, it is ORDERED that Respondent's motion to dismiss be, and is hereby, granted and that Petitioner's petition for a writ of habeas corpus pursuant to 28

12

U.S.C. § 2254 is hereby dismissed as time-barred. A certificate of appealability is DENIED.

SIGNED February __10__, 2017.

                                                    _____

                                              JOHN MCBRYDE
                                              UNITED STATES DISTRICT JUDGE